IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CT-3231-FL

| | |
|---|---|
| JERMAINE ANTWAN TART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| MARK TROCK, ) | |
| ) | |
| Defendant.[1] ) | |

This matter is before the court on the parties' cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 43, 48). The motions were fully briefed, and the issues raised are ripe for decision. For the reasons set forth below, the court grants defendants' motion for summary judgment and denies plaintiff's motion for summary judgment.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on August 2, 2019, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant willfully and maliciously produced fraudulent paperwork depicting false state policy, in violation of the First Amendment to the United States Constitution. Defendant Mark Trock ("Trock") is a Correctional Housing Unit Manager at Tabor Correctional Institution ("Tabor"). As relief, plaintiff seeks compensatory and punitive damages.

Following a period of discovery, and in accordance with the court's case management

---

[1] The court dismissed formerly named defendant Mail Room Staff by separate order entered May 14, 2020.

order, defendant moved for summary judgment on September 14, 2021. In support of the motion, defendant relies upon memorandum of law, statement of material facts, and appendix of exhibits comprising the following: 1) North Carolina Department of Public Safety Offender Public Information regarding plaintiff; 2) plaintiff's publicly-available list of prison infractions; 3) defendant Trock's declaration; 4) Tabor's Standard Operating Procedure regarding offender personal property; 5) Tabor's Standard Operating Procedure regarding mailroom operations; and 6) declaration of Kimberly D. Grande.

Plaintiff responded to defendant's motion by filing a cross motion for summary judgment on October 12, 2021. In support of the motion, plaintiff relies upon a memorandum of law and exhibit comprising Tabor's Standard Operating Procedure regarding offender personal property.

## STATEMENT OF THE FACTS

Plaintiff's complaint in its entirety states as follows:

On 10/17/16[,] Mark Trock and John Doe Mailroom Officer did willfully and maliciously produce fraudulent paperwork depicting false state policy to violate my First Amendment right to be free from censorship, state policy, and 18 U.S.C. §§ 1341, 1346 for fraud and swindles, in an attempt to use an artifice to obtain property in the form of an "Oxford American Writers Thesaurus" valued at around $40.00 plus tax by telling plaintiff he had to destroy the book or send it home. The defendants knew plaintiff was homeless upon [i]ncarceration. 1) Plaintiff was on the news and in the news paper upon arrest plus 2) plaintiff informed them while questioning them previously about what the camp does when censoring material.

My First Amendment right was violated through censorship of Oxford American Writers Thesaurus with the use of a fraudulent artifice. Exhibits #1 and #2 demonstrate the fraudulent misrepresentation. Exhibits #1 is the authentic NCDPS appeal form and exhibit #2 is the fake form I was given. Exhibit #3 shows the NCDPS policy that makes references of hardback books and has a demonstrative form which must mandatorily be given to inmates.

(Compl. (DE 1) 5–6; <u>see also</u> Pl.'s Exs. (DE 1-1) 1–11).

# DISCUSSION

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the

3

party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

Defendant argues plaintiff failed to exhaust available administrative remedies prior to filing this action. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and the court therefore may not excuse failure to exhaust, even to take special circumstances into account. Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); Woodford v. Ngo, 548 U.S. 81, 83–85 (2006). A prisoner must exhaust administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001).

Administrative exhaustion is "defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007). And the PLRA mandates "proper

4

exhaustion" meaning "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement. Woodford, 548 U.S. at 83, 90. Thus, an inmate properly exhausts administrative remedies only if she receives a decision "on the merits" of the grievance and complies with all procedural requirements for appealing the result. See id. at 90.

The North Carolina Department of Public Safety ("DPS") has a three-step administrative remedy procedure ("ARP"), which inmates must complete to exhaust administrative remedies. See DPS, Policy & Procedure Manual, Subchapter G, § 0300 et seq., available at https://www.ncdps.gov/adult-corrections/prisons/policy-procedure-manual; see also Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008) (describing policy).[2] The ARP first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. ARP § .0301(a). If informal resolution is unsuccessful, the ARP provides that any inmate in DPS custody may submit a written grievance on Form DC-410. Id. § .0310(a). If the inmate is not satisfied with the decision reached at the step one level of the grievance process, she may request relief from the facility head. Id. § .0310(b)(1). If the inmate is not satisfied with the decision reached by the facility head, she may appeal to the Secretary of Public Safety through the inmate grievance examiner. Id. § .0310(c)(1). The decision by the inmate grievance examiner or a modification by the Secretary of Public Safety shall constitute the final step of the ARP. Id. § .0310(c)(6).

Here, defendant Trock submits undisputed evidence that plaintiff failed to exhaust

---

[2] The ARP is a publicly available governmental record, the authentication of which is not questioned by the parties. Accordingly, the court may take judicial notice of the policy when resolving the instant motion. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Fauconier v. Clarke, 652 F. App'x 217, 220 n.4 (4th Cir. 2016).

5

administrative remedies prior to filing this action. See Grande Decl. ((DE 46-6) 1–134). Plaintiff does not challenge defendant Trock's submissions. Instead, plaintiff argues that he was "misled about whether [he] could grievance the issue through the fake form for mail rejection that [he] was given," and that he was "stopped or made to believe grievancing [sic] of the situation or issue was unavailable through 'machination and misrepresentation' resulting from the language used on the fraudulent rejection form." ((DE 48) 1–2).

The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Second, a remedy might be "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it" or "make sense of what it demands." Id. (citations omitted). Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Plaintiff's allegations do not establish that the administrative remedy process was unavailable to him. See Ross, 136 S. Ct. at 1859–60; Moss v. Harwood, 19 F.4th 614, 621–23 (4th Cir. 2021); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Moreover, plaintiff filed and exhausted numerous administrative grievances during the relevant time period. See Grande Decl. ((DE 46-6) 3–4, 16–134). Accordingly, defendant's motion for summary judgment is granted where the undisputed evidence establishes plaintiff failed to exhaust administrative remedies prior to filing this action.

C.	Plaintiff's Motions for Summary Judgment

Because the court has determined that, based on facts in the light most favorable to plaintiff, plaintiff failed to exhaust administrative remedies prior to filing this action, plaintiff's motion for summary judgment must fail. Accordingly, the court denies plaintiff's motion.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment (DE 43), DENIES plaintiff's motion for summary judgment (DE 48), and DISMISSES the action without prejudice for failure to exhaust administrative remedies. A dismissal without prejudice allows the prisoner an opportunity to exhaust the administrative process and then file a new suit, if the prisoner so chooses. The court DIRECTS the clerk to close the case.

SO ORDERED, this the 30th day of August, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge